UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| THOMAS HINGST, | ) |
| | ) |
| Plaintiff, | ) Cause No. |
| | ) |
| v. | ) |
| | ) |
| NALC MANAGEMENT COMPANY; | ) |
| GREGORY GOULD; | ) |
| | ) |
| Defendants. | ) |

## **COMPLAINT**

## **DEMAND FOR JURY TRIAL**

Plaintiff, by counsel, files his complaint against Defendants and in support states:

## **NATURE OF CASE**

1. This is an action to redress discrimination by Defendants NALC Management Company and Gregory Gould in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.*

## **JURISDICTION AND VENUE**

2. Jurisdiction is conferred on this court by 28 U.S.C. § 1331 as this matter involves federal questions.

3. All conditions precedent to the filing of this action have been met by Mr. Hingst in that he timely filed a charge with the Indiana Civil Rights Commission ("ICRC"), which was concurrently filed with the Equal Employment Opportunity Commission ("EEOC"). Mr. Hingst received a right-to-sue notice from the EEOC.

4. Venue is proper in this court pursuant to 28 U.S.C. § 1391 in that Mr. Hingst is a citizen of the Unites States and a resident of this judicial district, Defendants conduct business in this district, and the activities giving rise to Mr. Hingst's claims took place in this district.

**PARTIES**

5. Mr. Hingst was employed by NALC Management Company until he was terminated on April 11, 2016. Mr. Hingst was an "employee" as the term is defined in 42 U.S.C. § 12111(4). Mr. Hingst was also a "qualified individual with a disability" as the term is defined in 42 U.S.C. § 12111(8).

6. Defendant NALC Management Company is an Indiana corporation with its principal place of business in Cloverdale, Indiana. NALC Management Company is an "employer" as the term is defined in 42 U.S.C. § 12111(5) and is also a "covered entity" as the term is defined in 42 U.S.C. § 12111(2).

7. Defendant NALC, LLC is a Delaware corporation with its principal place of business in Cloverdale, Indiana.

8. Defendant Gregory Gould is a citizen and resident of Monroe County, Indiana.

9. Defendant Timothy Fogarty is a citizen and resident of Prospect, Kentucky.

10. Defendant Richard Boyd is a citizen and resident of Freedom, Indiana.

**FACTS**

11. Mr. Hingst was hired by Gregory Gould as Vice President of NALC, LLC on July 15, 2008.

12. Mr. Hingst became a part-owner of NALC, LLC in 2008 and remains a part-owner.

13. Gregory Gould, Timothy Fogarty, and Richard Boyd are each part owners of NALC, LLC. There are 6 owners total.

14. NALC Management Company ("NMC") was formed in or around June of 2014. Mr. Hingst is also a part owner of NMC, along with Gould, Fogarty, Boyd and others. NMC consist of all the owners of the company.

15. Mr. Hingst entered into the operative employment agreement (the "Agreement") with NMC, effective July 8, 2014. A true and accurate copy is attached hereto as Exhibit A.

16. At all relevant times, Gould served as Mr. Hingst's direct supervisor.

17. The Agreement was for a term of one year, and by its terms provided that it would automatically renew for successive one-year terms unless Mr. Hingst's employment was terminated. The agreement provided for compensation for Mr. Hingst in the event that his employment was terminated by the company without cause, or by Mr. Hingst for good reason.

18. In or around July of 2015, Gould advised Mr. Hingst that he needed to see a therapist and implied that Mr. Hingst's job was in jeopardy if he refused.

19. Prior to Mr. Hingst's meeting with the psychiatrist, Gould drafted and sent a letter to the psychiatrist purporting to offer "background" on Mr. Hingst. In the letter, Gould states that "input from a professional third-party is needed." He alleges that Mr. Hingst's work performance has deteriorated, and he attached work emails from Mr. Hingst. The letter also states that Mr. Hingst has acknowledged some health issues, including headaches, neck issues, heart screenings, and pain, and also that Mr. Hingst takes medication.

20. During a heated subsequent meeting between Gould, Boyd, and Mr. Hingst, Gould disclosed to Boyd that Mr. Hingst had seen a professional therapist.

21. Mr. Hingst was able to perform the essential functions of his job despite being regarded as disabled by Defendants.

22. On March 26, 2016, Gould suspended Mr. Hingst for two (2) weeks without pay and demoted him from Vice-President to Manager.

23. On April 11, 2016, Gould sent a notice informing Mr. Hingst that his employment had been terminated.

24. A related case involving state law claims is pending in Indiana in the Putnam County Circuit Court under the case number 67C01-1701-CT-35.

## COUNT I—EMPLOYMENT DISCRIMINATION (ADA)

25. During his employment with NALC Management Company, Mr. Hingst was "regarded" by his employer as having a disability as that term is defined by 42 U.S.C. § 12102(1)(C) and (3)(A).

26. Alternatively, Mr. Hingst was "disabled" as that term is defined by 42 U.S.C. § 12102(1)(A).

27. NMC unlawfully terminated Mr. Hingst's employment because it regarded him as too disabled to perform his job in violation of 42 U.S.C. § 12112(a).

28. Defendants' violations of the Americans with Disabilities Act ("ADA") have caused Mr. Hingst to suffer damages.

29. The violations of the ADA by Defendants were intentional, willful, oppressive, and in bad faith.

30. The unlawful conduct by Defendants was with malice or with reckless indifference to the federal protected rights of Mr. Hingst.

31. As a result of Defendants' conduct herein, Mr. Hingst has suffered and will continue to suffer from damage to his reputation and his ability to obtain suitable employment in his vocational field, severe mental anguish, and lost wages and benefits, and other damages.

## COUNT II—UNLAWFUL MEDICAL EXAMINATION AND INQUIRY (ADA)

32. Defendants required Mr. Hingst to undergo a medical examination or face losing his job in violation of 42 U.S.C. § 12112(d)(4)(A).

33. Defendants' violations of the ADA have caused Mr. Hingst to suffer damages.

34. The violations of the ADA by Defendants were intentional, willful, oppressive, and in bad faith.

35. The unlawful conduct by Defendants was with malice or with reckless indifference to the federal protected rights of Mr. Hingst.

36. As a result of Defendants' conduct herein, Mr. Hingst has suffered and will continue to suffer from damage to his reputation and his ability to obtain suitable employment in his vocational field, severe mental anguish, and lost wages and benefits, and other damages.

## COUNT III—UNLAWFUL DISCLOSURE OF MEDICAL INFORMATION (ADA)

37. Gould's disclosure of Mr. Hingst's medical history to Boyd constitutes a violation of 42 U.S.C. § 12112(d)(4)(C).

38. Furthermore, the use of Mr. Hingst's medical history to suspend and later terminate his employment is also a violation of 42 U.S.C. § 12112(d)(4)(C).

39. Defendants' violations of the ADA have caused Mr. Hingst to suffer damages.

40. The violations of the ADA by Defendants were intentional, willful, oppressive, and in bad faith.

41. The unlawful conduct by Defendants was with malice or with reckless indifference to the federal protected rights of Mr. Hingst.

42. As a result of Defendants' conduct herein, Mr. Hingst has suffered and will continue to suffer from damage to his reputation and his ability to obtain suitable employment in his vocational field, severe mental anguish, and lost wages and benefits, and other damages.

### COUNT IV—RETALIATION (ADA)

43. Mr. Hingst engaged in a protected activity when he complied with his former employer's requirement that he seek medical attention from a therapist.

44. By acquiescing to Gould's requirement and seeing a psychiatrist, Mr. Hingst made an implied request for reasonable accommodation under the ADA. *See Kowitz v. Trinity Health*, 839 F.3d 742 (8th Cir. 2016).

45. Because Gould himself requested that Mr. Hingst visit a psychiatrist and because he also wrote a letter to the psychiatrist detailing his concerns regarding Mr. Hingst, it is clear that Gould regarded Mr. Hingst as having a disability and was aware of Mr. Hingst's need for reasonable accommodation. The letter was written on company letterhead and discloses Mr. Hingst's salary as well as details regarding the value of his investment in the company.

46. Subsequently, Gould suspended and then terminated Mr. Hingst's employment for the very reasons that led Gould to conclude that Mr. Hingst was disabled and in need of professional therapy.

47. As a result of Defendants' conduct herein, Mr. Hingst has suffered and will continue to suffer from damage to his reputation and his ability to obtain suitable employment in his vocational field, severe mental anguish, and lost wages and benefits, and other damages.

### COUNT V—HIPAA VIOLATION

48. By disclosing portions of Mr. Hingst's medical history to Boyd, Gould violated the Health Insurance Portability and Accountability Act of 1996, 45 C.F.R. § 164 ("HIPAA").

49. Defendants' violations of HIPAA have caused Mr. Hingst to suffer damages.

50. The violations of HIPAA by Defendants were intentional, willful, oppressive, and in bad faith.

51. The unlawful conduct by Defendants was with malice or with reckless indifference to the federal protected rights of Mr. Hingst.

52. As a result of Gould's violations under HIPAA, Mr. Hingst has suffered and will continue to suffer from severe mental anguish.

### COUNT VI—INVASION OF PRIVACY

53. By disclosing portions of Mr. Hingst's medical history to Boyd, Gould violated Mr. Hingst's right to privacy under Indiana law.

54. Mr. Hingst's medical history is a matter of private concern, and is not a matter of public concern.

55. The disclosure of his medical history was highly offensive to Mr. Hingst.

56. As a result of Gould's violation of his right to privacy, Mr. Hingst has suffered and will continue to suffer from severe mental anguish, and has incurred damages.

### COUNT VII—INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

57. As his employer, NMC and Gould owed Mr. Hingst a duty to keep his medical history private.

58. The duty owed by Gould with respect to Mr. Hingst's medical history is informed by the ADA, 42 U.S.C. § 12112, which provides that an employee's medical records are

confidential, and by HIPAA, 45 C.F.R. § 164, which also forbids the disclosure of a person's medical records.

59. Gould breached this duty by providing details of Mr. Hingst's medical history to Richard Boyd.

60. Gould knew or should have known that the intentional disclosure of his medical records would cause severe mental anguish to Mr. Hingst.

61. As a proximate result of Gould's breach of his duty, Mr. Hingst has suffered and will continue to suffer from severe mental anguish, and has incurred damages.

## COUNT VIII—BREACH OF EMPLOYMENT CONTRACT

62. At all times relevant here, Mr. Hingst was an employee of NMC.

63. By the actions of Defendants, Mr. Hingst's employment was terminated without just cause, and in violation of the employment agreement. See Exh 1.

64. In violation of the Agreement, Defendants have refused to pay Mr. Hingst the compensation to which he is entitled.

65. As a result of Defendants' conduct herein, Mr. Hingst has suffered and will continue to suffer from damage to his reputation and his ability to obtain suitable employment in his vocational field, severe mental anguish, and lost wages and benefits, and other damages.

## Prayer for Relief

WHEREFORE, as a result of Defendants' violations of Plaintiff's rights, Plaintiff seeks the following relief:

> a. Compensatory damages, including, but not limited to, all wages, salary, employment benefits, and/or compensation denied or lost by Plaintiff as a result of Defendants' violation of Plaintiff's rights;

b.  All other monetary losses sustained by Plaintiff as a result of Defendants' violation of Plaintiff's rights;

c.  Front pay, back pay, and future lost benefits;

d.  Lost earning capacity;

e.  Compensation for emotional distress and suffering caused by Defendants' wrongful acts;

f.  Interest;

g.  Punitive damages;

h.  Attorney fees and costs; and

i.  Other relief that is just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff respectfully requests a trial by jury on all claims so triable in this matter.

     /s/ Nelson Nettle
Nelson A. Nettles, #16820-53
Zachary D. Price, #31469-53
LeBlanc Nettles Davis
401 E. Main St.
Brownsburg, IN 46112
(317) 858-3200
nelson@indianalawgroup.com
*Attorneys for Plaintiff*